## 160.  SOUTHERN EXPRESS COMPANY *v.* THE STATE.

1. The responsibility of corporations for violation of penal laws, though developed by gradual evolution, is well settled and necessary.

2. A corporation can be guilty of the offense of furnishing liquors to a minor, if such liquors be delivered to a minor by the agent of the corporation in the course of its business, or if such agent knowingly permits such delivery by another.

3. Proof of sale to one minor will sustain a conviction under an indictment charging that the defendant sold and furnished to three.  The word "furnish" as used in the Penal Code, § 444, has the same meaning as the word "deliver."

4. Where an indictment charges the accused with selling or furnishing three or more kinds of liquors, the evidence is sufficient to support a conviction if it shows the sale or furnishing of any one of the liquors charged. "The indictment may allege, in a single count, that the defendant did as many of the forbidden things as the pleader chooses, employing the conjunction *and,* where the statute has 'or,' and it will not be double, and it will be established at the trial by proof of any one of them." 1 Bish. New Cr. Proc. § 436.

5. To assume in a criminal case that the testimony for the State is the truth, though such testimony be not contradicted by evidence for the defendant, and to charge the jury that such testimony is the truth and that there is no contention to the contrary, is violative of section 4334 of the Civil Code, and demands a new trial.  The plea of not guilty, filed by the defendant, is a contention on his part as to every material and essential fact necessary to establish his guilt, and implies a denial of every such fact.

6. A conviction of a corporation for violation of section 444 of the Penal Code can not be sustained where the evidence fails to show that the delivery of the liquors was made by an agent of the company, unless it appears that such agent knowingly permitted such unlawful furnishing; and a verdict unsupported by proof of either of these facts is, for lack of evidence, contrary to law.

Indictment for furnishing liquor to minor, from Gordon superior court—Judge Fite.  November 24, 1906.

- Argued January 28,—Decided May 3, 1907.

*F. G. duBignon, McDaniel, Alston & Black, G. A. Coffee,* for plaintiff in error.  *Sam. P. Maddox, solicitor-general,* contra.

RUSSELL, J. The Southern Express Company was presented for the offense of furnishing spirituous, malt, and intoxicating liquors to three certain minors, named in the presentment. The Express Company is a corporation under the laws of Georgia, and was presented as a corporation. Before arraigment, the company demurred to the presentment, on the ground that the charge is set out in such a way as to word the same in the alternative, in that the charge is that the defendant did sell, give, and furnish to Wofford Cox, Cleveland Wofford, and Charlie Gresham, minors, spirituous, malt, and intoxicating liquors. It also demurred because the description of the liquor is not sufficiently definite to put the defendant on notice of the kind of liquor which the State expects to prove was given, sold, or furnished by the defendant. It also demurred upon the ground that the defendant, as a corporation, can not be indicted under section 444 of the Penal Code; and further because there was no statement in the presentment as to where the defendant was incorporated. This demurrer was overruled, and exceptions pendente lite were properly allowed, and are presented in the bill of exceptions.

The evidence developed the following state of facts: One of the three minors, in behalf of all of them, ordered some whisky from a liquor dealer in Chattanooga, Tennessee. It came by express, consigned to Wofford Cox, one of the three. Cleve Wofford paid the express charges and Wofford Cox received it. The three minors were each about eighteen years of age. These minors, after its delivery, took the whisky to a pine thicket, "opened it up," and drank it. Each of them testified that the fluid was corn whisky. This whisky was not ordered at or from the express office in Calhoun. It was ordered at Ballew's, in Calhoun, Georgia. The whisky was delivered by a boy, whom the testimony showed to be from twelve to fifteen years old, and who was referred to by the witnesses as "George Gardner's little boy." It was uncontradicted that he was not employed by the defendant. He was employed by the Western Union Telegraph Company, which had an office in the same place as the express company. The agent for the Western Union Telegraph Company was also agent for the Western and Atlantic Railroad Company and for the Southern Express Company. There is conflict in the evidence as to whether the agent, Mr. Parrott, was in the office at the time of

the delivery. Some witnesses testified that they did not know whether he was present, and others, including Parrott himself, swore positively that he was not present; but the only witness who testified that Parrott, the agent of the express company, was present also testified that he (Parrott), so far as the witness knew, had no knowledge of the delivery of the whisky. This witness (Cleveland Wofford) testified, "I seen Mr. Parrott in there then. I am sure about that. I don't think Mr. Parrott was up town then. At that time he was looking over some boxes and looking around for some express for somebody else. I don't know whether he (Parrott) was engaged with the express company's business at the time I was there or not. He was attending to *some business* around there in the office—I don't know what it was,—looking around for some boxes or something or another, hunting some express for somebody else I think." It was further in evidence that the young boy who delivered the whisky was not employed by the express company, and received no compensation from it; and the agent testified that he was not authorized by the express company to employ him or to delegate any authority to him. There was evidence that Cleveland Wofford, who paid the express charges had scattering beard on his face. He could not recollect whether he was the one who asked for the whisky or not. There was no evidence showing that the company had knowledge of the contents of the jug, or knowledge of the fact that it contained intoxicating liquor. Upon conviction the defendant made a motion for new trial, based on various exceptions to the charge of the court and refusals to charge as requested; the motion was overruled, and the writ of error presents for consideration the overruling of the demurrer, excepted to pendente lite, and the refusal of the new trial.

We think the demurrer was properly overruled. It is well settled that the offense defined in section 444 of the Penal Code may be properly set out by an allegation of sale to more than one minor, and sustained by proof as to any one of them. *Dukes* v. *State,* 79 *Ga.* 795. The word "give" may be treated as synonymous with "deliver," which is the meaning of the word "furnish," in this section; and it may, therefore, be regarded as surplusage. And it is well settled that a corporation is included in the word "person," used in the criminal statute. Penal Code, §2. It is true that the doctrine of holding corporations responsible for violation

of penal laws is one developed by gradual evolution, but it is none the less the law, and is of healthful necessity and utility. Mr. Thompson, in his work on Corporations, §6285, uses the following language: "The rule that laws are to be construed with such strictness as to restrain the real purpose of the legislature where they are penal, is believed to have no just principle upon which to rest, as there is no reason why a corporation should be included in the word 'person' for the purpose of jurisdiction, and be excluded from it for the purpose of being exempted from liability to penal actions for the commission of wrongs for which the statute law makes individuals so liable. On the contrary, such an interpretation gives to an aggregate body of wrong-doers an immunity from punishment which individuals do not enjoy. The sound rule is that corporations are to be construed as persons, when the circumstances in which they are placed are identical with those of a natural person expressly included in a statute, and where the statute can be as aptly applied to them as to corporations." Wells v. Muckitine, 4 Iowa, 302; Stewart v. Waterloo Turn Verein, 71 Iowa, 226. In *South Carolina R. Co.* v. *McDonald*, 5 *Ga.* 531, it is held that corporations are embraced in the word "person." A corporation "is a person under the law—an artificial person, created by the legislature. It has a name—a local habitation too. It is not a citizen in every sense of the word, but it is an inhabitant—it dwells where by law it is located. 2 How. S. C. Rep. 497. A corporation is a 'judicial person'—a legal entity. . . Where the law-making power uses the word *person*—where it is found in the statute book, it is to be presumed that the *legal* meaning is intended, and not the social or ordinary meaning. . . The General Assembly . . intended to guard against the very construction . . that the act applies only to natural persons."

There can be no question that while, at an early period, it was supposed that a corporation could not even commit a tort, for the reason that, being created for lawful purposes and having no power to do acts unlawful, whenever its agents or servants exceeded the charter authority they necessarily committed the act as individuals, and not as representatives of the corporation, still that view was found to be untenable, and it was found necessary to hold the corporation responsible for the torts of its servants. And for the same reason, while the corporation has no arm or hands by which

itself to commit a penal offense, still it can employ servants and agents whose acts are the acts of the corporation, and who can and do, in its behalf and at its behest, violate the criminal law. It is·well known that freight-trains are frequently run on the Sabbath day, the physical operation being the charge of the conductor and engineer and their assistants, but the actual running of the train being ordered and directed by those higher in authority, and having the company's business directly in charge. The servants who operate the train might greatly prefer to observe the Sabbath as a day of rest, but to retain their situation and the good will of their employers they have no option but to obey their orders. The case of *Southern Express Co.* v. *State,* 107 *Ga.* 670, cited by counsel for plaintiff in error, has no bearing on a case of furnishing liquor to minors. In fact, in that case the court refers to the case of *Burnett* v. *State,* 92 *Ga.* 474, and expressly distinguishes section 444, supra, from the local statute for Bartow County, then under consideration. The selling and furnishing of intoxicating liquors to minors is considered an exception to general rules in reference to sales.

It is unlawful, without the written authority of the guardian or parent of the minor, to be the medium in any way whatsoever by which the minor may obtain intoxicants. An express company, where the delivery is not "C. O. D.," can deliver intoxicating liquor to the consignee, because the sale was complete and is supposed to have been lawful when such liquors were delivered by the consignor to the carrier. The consignee, when of lawful age, has the right to the possession. The consignee, when a minor, has no · right to buy, or by any means be supplied or furnished with intoxicating liquors without the written authority of his parent or guardian. "It has been repeatedly held that a saloon-keeper who allows an adult to buy intoxicating liquor and give it to a minor to drink in his saloon is guilty of the violation of the statute against furnishing liquor to minors." *People* v. *Neumann* (Mich.), 48 N. W. 290; *State* v. *Munson,* 25 Ohio St. 381; *State* v. *Best* (N. C.), 12 S. E. 907. The word "furnish," in the Penal Code, §444, has the same meaning as "deliver." The General Assembly, in the passage of this statute, intended to make it penal for any person in any way to enable minors to have access to intoxicating liquors. And that this was the construction placed upon it by the Supreme

Court is clearly shown by the decisions in *Blodgett* v. *State*, 97 *Ga.* 351; *Dixon* v. *State*, 89 *Ga.* 785, as well as by a number of others. There is no merit in the complaint that the State failed to show that the minors did not have written authority. Where intoxicating liquors are shown to have been delivered to a minor, it is incumbent upon the defendant to make proof that he had written authority from the parent or guardian of such minor authorizing such sale or delivery.

In view of what we have said above, there is no merit in the exceptions to the judge's charge, as taken in the first, second, and third grounds of the amended motion; nor did the judge err in charging the jury in his recharge, as follows: "It is the duty of the express company to ship liquor or anything else delivered to it to the point of destination; it is not the duty of the company to deliver liquor to minors. If the company does it through its agent, employees or any person that they have in their employ about the building to deliver packages, if it is done by the agent or any person acting under the agent, by his direction or with his consent, delivering packages generally, if in doing that they deliver liquor to minors, then that is a violation of the law." The errors assigned as to this instruction are, that the word "delivered" is there used as synonymous with the word "furnished;" that it charges that if the delivery is by the agent, or by any person acting under the agent and by his direction or consent, and is a delivery of liquor to minors, then it is a violation of the law; and further, that it leaves out of consideration the fact that the company must have known the character of the liquor, or the facts must have been such as to reasonably put the company upon notice of the contents of the package; and further, that the company was presented for the offense described in the first paragraph of §444, for itself selling and furnishing the liquor, whereas the charge of the court is such as to make the defendant guilty under either the first or the second clause of that section. So far as the first three objections to the charge are concerned, it is a sound presentation of the law. The fourth exception appears to us to be well taken. Section 444 of the Penal Code "makes it an offense for one to sell or furnish spirituous liquors to a minor by himself or another; that is the act of the party himself. But where the liquor is sold or furnished to a minor by a person other than the defendant and

not by his order or direction, if he permit it to be done, this is a different offense under the code. If the liquor was furnished or sold to a minor by a person other than the accused and not under his order and direction, it was his duty to prevent it from being done. His failing to do so makes him liable as permitting it to be done; and he should be so charged in the indictment; but he was not so charged in this case." *Johnson* v. *State, 83 Ga.* 555.

The exception contained in the fifth ground of the amended motion for new trial is well taken, and demands the grant of a new trial. The portion of the charge excepted to is as follows: "Now, there is no contention here that the party who delivered the liquor did not know it was liquor. Therefore it is not necessary to charge on this point. The State contends that the liquor was delivered, and there is no contention here that the party who delivered it didn't know it was whisky." This was a manifest expression on the part of the court that it had been proved that the article delivered was whisky, and that the party who delivered it knew it was whisky. Such a statement on the part of the court is forbidden by law and is reversible error. It is true that the evidence of three witnesses for the State was to the effect that it was whisky; and there is no evidence to the contrary. But the defendant's plea of not guilty put the State on proof of every material allegation in the indictment, and submitted to the jury, not only the facts testified to by witnesses, but also the credibility of each and every witness. Further, there was no evidence as to whether the party who delivered it knew or did not know that it was whisky. There was certainly no evidence that he knew it to be whisky. And while the defendant had the right to put the State on proof of every material fact necessary to establish his guilt, it was not only illegal, but manifestly prejudicial, to state that there was no contention "that the party who delivered it didn't know it was whisky." The State was obliged to show that it was whisky, or some like intoxicating liquor, and submitted testimony upon that subject for the consideration of the jury. The defendant had the right, under his plea of not guilty, to have the jury, and not the court, pass upon the issues of fact in the case. This court is bitterly opposed to the furnishing of liquor to minors by any means or device whatsoever, but even in trials for that offense the "dumb act" (Civil Code, §4334) is of force. The court should have granted a new

trial, not because the corporation could not be indicted, or because its delivery of whisky would not amount to furnishing, nor upon the other grounds which have been referred to, but because of the intimation and expression of opinion on the evidence above quoted, and because the verdict is contrary to law, for lack of evidence to support it. The corporation can be guilty of furnishing liquor to a minor, but it can only be guilty because it is held responsible for the acts of its agents, and, in case of furnishing liquor to a minor, for permission given by its agent, for the sale or furnishing of the liquors in question. There was no evidence introduced by the State in this case which showed that the agent knew of the delivery, consented to it or permitted it. The only witness who testified that the agent was present (taking his testimony to be the truth) also testified that there was nothing to attract the attention of the agent to the delivery; none of the parties interested in the whisky spoke to him, and, if present, he was absorbed in the consideration of other business. The proof was uncontradicted that the boy who delivered the whisky was not employed by the express company. If the State had shown that the agent was looking at the boy, or told the boy to deliver the whisky, or was silently standing by, and made no protest when he saw the boy delivering the same, the jury might have been authorized to consider the act of the boy as the act of the agent, and then the act of the agent would have been the act of the company. But the State's own testimony negatives the idea that the agent either knew of, consented to, or permitted the delivery in this case.

*Judgment reversed.*