### 24149. POOLE v. THE STATE.

DECIDED OCTOBER 29, 1934.

W. A. Morgan, W. E. Perry, for plaintiff in error.
Hamilton Burch, solicitor, contra.

MACINTYRE, J. The only question for determination in this case is whether or not the evidence supports the verdict finding Nig Poole guilty of possessing intoxicating liquor.

J. B. McDonald, deputy sheriff of Lowndes county, testified, that while looking for some stolen chickens at the "defendant's house,": he went into the "pantry of the kitchen" and found about a gallon of liquor there in a jug; that witness then "went to Nig's room and it was locked;" that Nig was not at home and his wife said he "had the key to this room;" that Nig had unlocked this room for witness before, and that witness broke the door open and found about two gallons of liquor in the room; and that all this occurred in the month of February, in Lowndes county, Georgia. On cross-examination the witness testified that he didn't know whether the defendant or his wife ran the house, but that when he went there he "always found the defendant there except this one time;" that the house had two stories and several rooms, and he didn't know what room the defendant occupied, but "understood he occupied the room in which the liquor was found;" that he "didn't know whose liquor it was, only it was at defendant's house;" and that he didn't know that the defendant "kept baseball players at his house."

For the defendant, a negro testified that he "worked for Nig Poole's wife as cook," and was present when the liquor was found

in the pantry, but that "he had some boys in the kitchen and they must have put the liquor in there;" that Nig's wife ran the place, and ball players boarded with her; that the day the officer came, "Nig had gone to Jasper to see about some ball players;" and that he had been working with Nig's wife for some time, and had never seen Nig with any liquor.   A negro boy testified that he "worked at Nig's place of business for Nig's wife, and that the room the whisky was claimed to have been found in was not Nig's room, as Nig . . occupied just any room, and the room in which the whisky was found was used by company;" that "some ball players used this room and it must have been their liquor;" that on the day of the raid "Nig went to Florida to get some ball players;" and that the witness "didn't know anything about the liquor, as he didn't know it was there."

The defendant stated to the jury that he was working at the Valdez hotel and "didn't know anything about the liquor, and it wasn't his;" that when the officer came "he had an evening off from his work and went to Jasper to see about some ball players;" that the room the officer broke open was not defendant's room, but that it "was rented out to roomers" who "came and went as they saw fit;" and that his wife "run the place and he helped her as best he could when he was off from his work."

The house where the liquor was found in two different rooms in rather large quantities appears to have been the defendant's home. There is no testimony that any other family or person than the defendant and his wife lived there permanently, or had any control over the place.   The officer swore that previously the defendant had unlocked the door to the room in which two gallons of liquor were found, and that the defendant's wife told him that "Nig had the key to this room."   The jury may have thought that this testimony threw some doubt upon the defendant's statement that the room in question "was rented out to roomers, and they came and went as they saw fit," and also upon the testimony of the defendant's witnesses to the same effect.   Again, "ball players," without more, generally means "baseball players," just as the sheriff appears to have thought, and it may be that the jury were skeptical about the defendant's utilizing his night off from work to go to Perry, Florida, and get ball players in the month of February. Certainly neither the defendant nor any witness gave the name of

any ball player, or other person, who boarded with the defendant's wife. We think that the jury was warranted in concluding that the defendant was the head of the house where the whisky was found, and that he owned all or a part of the whisky, or, at least, that he knowingly allowed it to remain there. See, in this connection, *Buchanan* v. *State*, 34 *Ga. App.* 156 (128 S. E. 686). We hold that the evidence supports the verdict, and that the trial judge did not err in overruling the motion for a new trial, containing only the usual general grounds.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*